IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| CURTIS DINGER, <br> *Plaintiff*, | § § § § | |
| v. | § § | Civil Action No. |
| SMITH COUNTY, TEXAS, <br> *Defendant*. | § § § § § | |

## COMPLAINT

Curtis Dinger complains of Smith County, Texas ("County"), as follows:

### Nature of the Case

1. This is an employment/wage and hour case. Dinger alleges that the County willfully failed to pay Dinger for all hours worked at his regular rate of pay, willfully failed to pay Dinger at least one and one-half times his regular rate of pay for hours worked in excess of forty hours per each seven-day work week, and willfully failed to keep/maintain proper records. Dinger seeks redress for these acts and omissions by bringing a claim against the County under 29 U.S.C. §216(b) of the Fair Labor Standards act of 1938 ("FLSA").

### Parties

2. Plaintiff Dinger is a citizen and resident of the State of Texas.

3. Defendant Smith County, Texas ("County") is a political subdivision of the State of Texas. **It may be served with process by serving its county judge, Mr. Joel Baker, at the Smith County Annex Building, 200 East Ferguson, Suite 100, Tyler, Texas 75702**, or wherever he may be found. TEX. CIV. PRAC. & REM. CODE §17.024(a).

## Jurisdiction

4. This Court has subject matter jurisdiction over this action because Dinger's FLSA claim presents federal questions pursuant to 28 U.S.C. §1331.

5. This Court has *in personam* jurisdiction over the County because Dinger's FLSA claim arose in Texas and the County is amenable to service by this Court.

## Venue

6. Venue is proper in this judicial district because the events forming the basis of Dinger's FLSA claim occurred there. 28 U.S.C. §1391(b)(2).

## Material Facts

7. The County previously employed Dinger.

8. The County employed Dinger beginning in May 2005.

9. Between May 2005 and December 15, 2012, the County employed Dinger.

10. For the period between June 1, 2005 and December 15, 2012, the County prepared, or had prepared, IRS Form W-2s that identified the County as Dinger's employer.

11. For at least some of the period of time between June 1, 2005 and December 15, 2012, Dinger was eligible to participate in the Texas County and District Retirement System.

12. Between June 1, 2005 and December 15, 2012, the County assigned Dinger to work in the Smith County Sheriff's Office.

13. Between June 1, 2005 and December 15, 2012, Dinger worked approximately 40 hours per workweek.

14. Between June 1, 2005 and December 15, 2012, Dinger was not paid an annual salary.

15. Between June 1, 2005 and December 15, 2012, Dinger was paid by the hour.

16. Some time between June 1, 2005 and December 15, 2012, one of Dinger's "regular rates" of pay, as the phrase "regular rate" is defined in 29 U.S.C. §207(e), was $22.60 per hour.

17. At no time between June 1, 2005 and December 15, 2012 was Dinger ever classified as an "exempt employee," as that phrase is defined in 29 U.S.C. §§213(a)(1), (17).

18. On April 1, 2009, the County issued a "police service dog" or "PSD" to Dinger. The breed of dog was German Shepherd, its name was Bingo, and it lived with Dinger.

19. On April 1, 2009, the County assigned Dinger to a position that included a role as "K-9 Officer."

20. On April 1, 2009, the County assigned Dinger to a position that included a role as "K-9 Officer," for which the County paid Dinger a category of wages that the County called "handler time."

21. On April 1, 2009, the County assigned Dinger to a position that included a role as "K-9 Officer," for which the County paid Dinger a category of wages that the County "handler time" in the amount of one hour for each day.

22. On October 7, 2009, Dinger met face-to-face with Lieutenant Larry Wigginton of the Smith County Sheriff's Office.

23. On October 7, 2009, Dinger met face-to-face with Lieutenant Larry Wigginton of the Smith County Sheriff's Office, at which time Wigginton advised Dinger that the County would no longer pay Dinger any "handler time."

24. On October 7, 2009, Dinger met face-to-face with Lieutenant Larry Wigginton of

the Smith County Sheriff's Office, at which time Wigginton advised Dinger that the County would no longer pay Dinger any "handler time," to which Dinger responded by telling Wigginton that he, *i.e.,* Dinger, believed that federal law required the County to pay him, *i.e.,* Dinger, "handler time."

25. Dinger's employment included a role as "K-9 Officer" at all times from October 7, 2009 to December 15, 2012.

26. The County did not pay Dinger any "handler time" wages at any time from October 7, 2009 through December 15, 2012.

27. Dinger's last day of employment with the County was on December 15, 2012.

## Count One – FLSA

28. Dinger re-alleges and incorporates by reference all allegations set forth in paragraphs 7 through 27.

29. At all times from October 7, 2009 to December 15, 2012, the County was an "employer" of Dinger as that word is defined in 29 U.S.C. §203(d).

30. At all times from October 7, 2009 to December 15, 2012, Dinger was an "employee" of Dinger as that word is defined in 29 U.S.C. §203(e)(1).

31. At all times from October 7, 2009 to December 15, 2012, Dinger was a nonexempt employee under the guidelines of the Fair Labor Standards Act, 29 U.S.C. §§201 et seq.

32. Between October 7, 2009 and December 15, 2012, Dinger was legally entitled to be paid for all hours worked at his "regular rates" and/or one and one-half times his "regular rates" for all hours worked in excess of forty hours during each seven-day workweek. 29 U.S.C.

§206(a), §207(a).

33. Between October 7, 2009 and December 15, 2012, the County failed to pay Dinger for all hours worked at his "regular rates" and/or for all hours worked in excess of forty at one and one-half times his "regular rates."

34. As a result, the County regularly shorted Dinger on his paycheck by not paying Dinger for all hours worked by Dinger at his "regular rates" and/or at a rate of time and one-half for hours worked in excess of forty per workweek.

### A. The County Failed to Keep Accurate Records of Time Worked

35. The FLSA requires employers to keep accurate records of hours worked by nonexempt employees. 29 U.S.C. §211(c).

36. The County failed to do this with regard to Dinger. Thus, in addition to pay violations of the FLSA described hereinabove, Dinger brings this action against the County for failing to keep proper time records as required by the FLSA.

### B. The County's Illegal Actions Were and Are Willful Violations of the FLSA, For Which Dinger is Entitled to Receive Liquidated Damages

37. The County's illegal pattern or practice with respect to compensation, plus its failure to keep accurate time records, are all direct violations of the FLSA.

38. The County can cite no exemption, which is its burden to do, for failing to pay Dinger at his regular rates for all hours worked and at his proper overtime rate of time and one-half for all hours worked in excess of forty hours per workweek.

39. The County has not made a good faith effort to comply with the FLSA with regard to Dinger.

40. Rather, the County knowingly, willfully and with reckless disregard carried out

an illegal pattern or practice regarding overtime compensation and the payment of wages to Dinger.

41. The County's practice of failing to pay Dinger for all hours worked at his regular rates and/or overtime compensation at one and one-half times his regular rates for all hours worked in excess of forty hours per workweek is in direct violation of the FLSA. 29 U.S.C. §206(a), §207(a).

42. The County violated the FLSA by failing to pay Dinger his full and proper compensation.

43. Dinger seeks payment for all hours worked at his regular rates and/or all hours worked in excess of forty hours per workweek in an amount that is one and one-half times his regular rates of pay.

44. Dinger seeks liquidated damages in an amount equal to his unpaid regular and overtime wages as a result of the County's failure to comply with the guidelines of the FLSA.

45. Dinger seeks an award of attorney's fees -- both for this action, and for any and all appeals as may be necessary.

46. Dinger seeks an award of expert witness fees incurred by him and/or his attorney in the preparation and prosecution of this action.

47. Dinger seeks an award of post-judgment interest at the maximum legal rate.

48. Dinger seeks any other form or relief that is available under the FLSA.

**Request for Relief**

WHEREFORE, Curtis Dinger asks for the foregoing relief, and for all such other and further relief to which he is justly entitled.

Dated May 7, 2013

                    Respectfully submitted,

                          /s/
By: _____
                    **Wade A. Forsman**
                    State Bar No. 07264257
                    P.O. Box 918
                    Sulphur Springs, TX 75483-0918
                    903.689.4144 Telephone-East Texas
                    972.499.4004 Telephone–Dallas/Fort Worth
                    903.689.7001 Facsimile
                    wade@forsmanlaw.com

                    **Attorney for Plaintiff Curtis Dinger**